**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | : : : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : : | |
| JULIE EISEN, JASON BARNETT, JARED BARNETT, PAUL BARNETT, LORI BARNETT, and PAUL OWENS, | : : : : | NO. 11-05872 |
| Defendants. | : : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                          March 15, 2012

Presently before the Court are: (1) Defendants[1] Julie Eisen, Jason Barnett, Jared Barnett, Paul Barnett, and Lori Barnett's ("the Barnetts") Motion Pursuant to Federal Rule of Civil Procedure 12(c) for Judgement [*sic*] on the Pleadings; (2) Defendant Paul Owens's ("Owens") Response and Cross-Motion for Judgment on the Pleadings Or, In the Alternative, Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56; and (3) the Barnetts' Reply and Addendum to Owens's Motion for Summary Judgment. For the following reasons, summary judgment is granted in favor of the Barnetts.

**I.    BACKGROUND**

**A.    Statement of the Facts**

This matter involves a dispute regarding a life insurance policy and the Commonwealth of

---

[1] In their briefing submitted to the Court, these parties repeatedly refer to themselves as "Defendants/Cross-Claim Defendants/Cross-Claim Plaintiffs" as a result of the procedural posture of this case. For clarity and ease of reference, the Court refers to them hereinafter as "the Barnetts."

Pennsylvania's power of attorney statute.  Prior to his death, Bruce H. Eisen ("Eisen") purchased a life insurance policy in the amount of $750,000.00 from Plaintiff Prudential Insurance Company of America ("Prudential").  (Compl. ¶ 11.)  In early 2004, Eisen sought to appoint his sister Lori Barnett ("Lori"), a resident of Kansas, the power of attorney over his legal and financial affairs.  (Id. ¶ 12.) During the execution of the power of attorney, Eisen was required to read and sign a statutorily-mandated notice, which explicitly stated that:

> The purpose of this power of attorney is to give the person you designate ("your agent") broad powers to handle your property . . . Your agent may exercise the powers given here throughout your lifetime, even after you become incapacitated, unless you expressly limit the duration of these powers or you revoke these powers or a court acting on your behalf terminates your agent's authority.

(Id., Ex. A) (capitalization of text omitted).  Eisen signed and notarized the document.  (Id.) Thereafter, on January 31, 2004, Eisen granted Lori the power of attorney ("the Barnett POA") over his financial and legal affairs.  (Id. ¶ 12; Ex. A.)  The Barnett POA gave Lori the authority to conduct insurance and benefit plan transactions on Eisen's behalf, including the right to change the beneficiaries and ownership of Eisen's life insurance proceeds.  (Id., Ex. A ¶ 7.)  Pursuant to this authority, Lori submitted a beneficiary designation form to Prudential on January 21, 2011, designating the Barnetts as the beneficiaries of Eisen's life insurance policy, with each family member to receive an equal 20% share.  (Compl. ¶ 13; Ex. B.)

At some point after execution of the Barnett POA, Eisen began a long-term battle with terminal oral cancer.[2]  (Barnetts' Answer & Affirm. Defenses to Compl. in Interpleader & Cross-cl. Against Def. Owens ("Barnett Answer") ¶ 28.)  His mental and physical health significantly declined over the years, and in November 2010, the cancer allegedly metastasized to his brain.  (Id.)

---

[2] Neither party has provided to the Court the approximate date of Eisen's diagnosis.

According to Owens, Eisen's relationship with the Barnetts deteriorated in the years immediately preceding his death.  Eisen and his daughter, Julie Eisen, became estranged.  (Aff. of Paul Owens ¶ 3.)  Owens also asserts that Eisen suspected that Lori was unlawfully transferring and withdrawing money from his financial accounts without his permission under the guise of her power of attorney authority.  (Id. ¶¶ 4, 5.)  Apparently as a result of this familial deterioration, Eisen executed a second power of attorney on February 2, 2011 that designated his "close friend" Owens as his attorney-in-fact ("Owens POA").  (Id. ¶ 6.)  To effectuate this second power of attorney, Owens downloaded and filled out a standard power of attorney form from the Internet.  (Owens's Resp. to Mot. for J. on the Pleadings Or, In the Alternative, Mot. for Summ. J. ("Owens's Resp.") 6.)  The Owens POA also granted Owens the authority to manage Eisen's life insurance policies.  (Compl., Ex. C.)  Notably, the Owens POA was silent as to whether it intended to revoke, terminate, or modify the previous Barnett POA. (Id.)

On March 3, 2011, Eisen allegedly contacted his bank and informed appropriate personnel that Owens was entitled to manage his bank account pursuant to his status as Eisen's attorney-in-fact.  (Aff. of Paul Owens ¶¶ 7, 8.)   The bank gave Eisen a form to complete to effectuate this transfer and terminate Barnett's access to Eisen's bank account.  (Id. ¶ 8; Barnetts' Reply to Resp. of Paul Owens ("Barnetts' Reply"), Ex. A, PNC Bank POA Revocation.)  Eisen completed and signed the form on March 14, 2011.  (Barnetts' Reply, Ex. A.)

On March 29, 2011, Eisen purportedly requested Owens to prepare a new will on his behalf, through which Owens claims he sought to disinherit his family and name Owens as the sole beneficiary of his estate and the life insurance policy.  (Owens's Answer, New Matter and Cross-cl. Against Barnetts ("Owens's Answer"), Ex. A.)  Owens downloaded a standard will document from

3

the Internet to execute the will, and named himself as executor and sole recipient of Eisen's residuary estate.  (Id.)

On April 14, 2011, Eisen submitted a change of beneficiary designation form to Prudential, which designated Owens as the sole beneficiary of his life insurance policy.  (Compl. ¶ 16; Ex. D.)  Eisen signed the form and had it notarized.  (Id.)  The form contains no notation indicating that he meant to terminate the Barnett POA.

At some point, Lori became aware of the change of beneficiary designation.[3]  She claims that she believed that the change was a result of Owens's "undue influence" over Eisen during the later stages of his terminal cancer battle.  (Barnetts' Answer ¶ 16.)  Therefore, Lori submitted another change of beneficiary designation form to Prudential on April 25, 2011, once again designating the Barnetts as the beneficiaries of the life insurance policy.  (Compl., Ex. E.)  On the form, Barnett indicated that she was making the designation in her capacity as Eisen's power of attorney.  (Id.)  Prudential acknowledged Lori's form submission on April 27, 2011.  (Id.)  Eisen died the very next day in Pennsylvania.  (Compl. ¶ 18.)

On May 9, 2011, the Barnetts submitted beneficiary claims forms for the proceeds of Eisen's life insurance policy.  (Id. ¶ 20; Ex. G.)  Five days later, Owens submitted a beneficiary claims form for the proceeds.  (Id. ¶ 21; Ex. H.)

## B.    Procedural History

On September 16, 2011, Prudential, as a mere stakeholder in the legal action, filed its Complaint in Interpleader naming both the Barnetts and Owens as defendants.  Owens filed his Answer to the Interpleader Complaint and a Cross-Claim against the Barnetts on October 14, 2011.

---

[3] Neither party has informed the Court when Lori became aware of this change.

4

On November 21, 2011, the Barnetts filed: (1) an Answer and Affirmative Defenses to Prudential's Complaint in Interpleader and Owens' Cross-Claim; and (2) their own Cross-Claim against Owens seeking a declaratory judgment.  On December 20, 2011, Owens filed an Answer and Affirmative Defenses to the Barnetts' Cross-Claim asserted against him.

On January 9, 2012, the Barnetts filed a Motion for a Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On January 23, 2012, Owens filed: (1) a Response in Opposition to the Barnetts' Motion for Judgment on the Pleadings; (2) a Cross-Motion for Judgment on the Pleadings; and (3) In the Alternative, A Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  The Barnetts filed a Reply on February 9, 2012.  The Barnetts filed an addendum to their Reply on February 14, 2012.  The Court now considers the merits of this action.

## II.     STANDARD OF REVIEW

While the Barnetts' current Motion is styled as one brought for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c), it references matters outside the pleadings.  Under such circumstances, a motion for a judgment on the pleadings converts into a motion for summary judgment pursuant to Rule 12(d).[4]  "Under Rule 12(d), a Court properly converts a motion [brought under Rule 12(c)] to one for summary judgment if: (1) the materials submitted required conversion, and (2) the parties had adequate notice of an intention to convert the motion."  Brown v. U.S. Steel Corp., No. Civ.A.10-780, 2010 WL 4388075, at *4 (M.D. Pa. Oct. 29, 2010) (citing Phat Van Le v. Univ. of Med. & Dentistry of N.J., No. Civ.A.09-2632, 2010 WL 1896415, *4 (3d Cir. May 12,

---

[4] On March 14, 2012, the Court held a hearing, at which point the parties were apprised of the Court's intention to convert the present Motion into one for summary judgment.  Neither party objected to this characterization, and informed the Court that all relevant materials had been admitted such that consideration of summary judgment was appropriate.

5

2010)) (further citation omitted).  Both requirements are satisfied in the instant case.  First, all parties submitted and refer to documents which are outside the pleadings.  In regards to notice, the Court remarks that in his Motion dated January 23, 2011, Owens specifically requested summary judgment under Rule 56 as an alternative to the Barnetts' motion for a judgment on the pleadings.  The Barnetts filed a Response on February 9, 2011, in which they explicitly acknowledged, briefed, and responded to Owens's request for summary judgment and attached eleven exhibits for the Court's consideration.  This is more than sufficient to constitute adequate notice.  Thus, the Court converts the Barnetts' Motion into a motion for summary judgment pursuant to Rule 12(d), and treats both parties' Motions as cross-motions for summary judgment.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361

6

(3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S. at 586.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.  Summary judgment may be granted when "the evidence is merely colorable . . . or is not significantly probative."  Id. at 249–50 (citations omitted).

Notably, "[t]he rule is no different where there are cross-motions for summary judgment."  Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008).  As stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'"  Id. (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III.   DISCUSSION

Presently before the Court are two issues to consider in order to determine if either party is entitled to summary judgment as a matter of law: (1) whether Lori was on notice of Eisen's alleged

intent to revoke her power of attorney authority; and (2) whether Lori acted within the scope of her fiduciary duty as Eisen's agent as required by Pennsylvania's power of attorney statute. The Court considers each issue in turn.

### A.    Alleged Notice of Revocation of the Barnett POA

The Court first considers whether the Owens POA revoked the previous Barnett POA, thereby effectively terminating Lori's authority to change the designation of the beneficiaries of Eisen's life insurance policy. Owens asserts that the Owens POA "speaks for itself" and that the "intent of the document was to revoke the prior [Barnett] power of attorney." (Owens's Answer ¶¶ 14, 15.) In the alternative, he asserts that Lori had "constructive notice" of the termination of the Barnett POA. The Barnetts respond that Lori received no "actual, express, constructive, or other oral or written notice or communication" of any kind informing her of the Owens POA or its alleged intention to revoke the Barnett POA, and that her subsequent actions were therefore valid. (Barnetts' Answer ¶ 15.)

"A power of attorney is an instrument granting someone authority to act as agent or attorney-in-fact for the grantor . . . [and] designate[s] [a legal agent] to transact business for another[.]" In re St. Felix, 436 B.R. 786, 789 (Bankr. E.D. Pa. 2010) (internal citations and quotations omitted). In Pennsylvania, power of attorney actions are governed by statute, 20 Pa. C.S.A. § 5601, et. seq. Importantly, the statute lacks any language stating that the execution of a subsequent power of attorney revokes any previously executed power of attorney. To the contrary, the statute provides that a principal may appoint more than one agent as his attorney-in-fact, and that absent the principal's specific designation indicating otherwise, the agents "shall only act jointly." 20 Pa. Cons. Stat. Ann. § 5602(b). Moreover, under § 5604, a power of attorney remains "valid notwithstanding the lapse of time since its execution . . . *[u]nless the power of attorney states a time of termination*."

8

Id. at § 5604(b) (emphasis added).   Finally, "[i]f one elects to include a contingency it must be part of the instrument; the court may not consider contingencies that are not made part of the written power of attorney."   Bova v. United States, 80 Fed. Cl. 449, 456 (Fed. Cl. 2008).

In the instant case, there is no indication that the Owens POA was explicitly intended to revoke the previously-executed Barnett POA.   The statutory language makes clear that Eisen's execution of a second power of attorney appointing Owens as his attorney-in-fact did not automatically revoke the first power of attorney granted to Lori.   Rather, absent a contradictory indication expressed by Eisen in either POA, the statute required Owens to act jointly with Lori upon execution of the second power of attorney.

Moreover, neither POA includes any language indicating a specific time or contingent event that would terminate the Barnett POA.   To the contrary, the statutorily-mandated notice preceding the Barnett POA—which bears Eisen's signature and acknowledgment—clearly states that Lori could exercise her "broad power" throughout Eisen's lifetime unless Eisen himself expressly limited the duration of this power in the agreement itself or revoked her powers.   (See Compl., Ex. A.) Despite being free to do so,  Eisen did not include such a section in the Barnett POA.   As recognized by the court in Bova:  "[a] wide range of options exists for drafting powers of attorney to capture the particular circumstances and intentions of people designating others to act on their behalf.   The court cannot skirt the Pennsylvania statutory scheme [simply] because those drafting the instrument . . . failed to take advantage of that flexibility."   Bova, 80 Fed. Cl. at 456.   Given that Lori's power was not revoked pursuant to any limiting condition in either POA, her authority is considered to be "valid notwithstanding the lapse of time since its execution" under Pennsylvania statutory law.   20 Pa. Cons. Stat. Ann. § 5604(b).   Thus, Owens's bald assertion that the Owens POA "speaks for itself" in its intent to revoke the Barnett POA is without merit, and it is presumed that Lori was acting

pursuant to a validly executed power of attorney unless she was somehow placed on notice of the termination of that power.[5]

Pennsylvania's power of attorney statute is devoid of any provision explicitly stating what type of notice is required to inform an agent of the revocation of his power of attorney authority.  The statute does, however, make several references to an agent's "actual knowledge" under certain circumstances.  In fact, this is the only type of knowledge or notice mentioned in the statute.  For example, § 5605 of the statute, aptly titled "power of attorney not revoked until notice," addresses the revocation of an agent's power in the event of the principal's death, disability/incapacity, or divorce.  In each circumstance, the statute requires the agent to have "actual knowledge" of the event causing the revocation.  The statute further states that absent actual knowledge, any actions taken by the agent on behalf of the principal "shall bind the principal and his successors in interest."  20 Pa. Cons. Stat. Ann. § 5605(a–c).  Similarly, § 5606 addresses the "[p]roof of continuance of the power of attorney by affidavit."  20 Pa. Cons. Stat. Ann. § 5606.  This statutory section provides

---

[5] The Barnetts also assert that the parol evidence rule precludes a finding that the Barnett POA was revoked by the subsequent Owens POA.  The Barnetts aver that because the Owens POA lacks any clear statement providing for revocation of the Barnett POA, Owens attempts to introduce Eisen's alleged oral statements indicating this intent are barred by the rule.  In Pennsylvania, the parol evidence rule provides that "absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter, vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument."  Bova, 80 Fed. Cl. at 456 (citing Kehr Packages, Inc. v. Fidelity Bank, N.A., 710 A.2d 1169, 1172 (Pa. Super.1998)) (footnote omitted).  Moreover, prior to admitting parol evidence, a court must find that the contract is not "a final and complete expression of the parties' agreement."  Id.

Here, both the Barnett POA and Owens POA were final and complete representations of the parties' agreements.  Both POAs were signed, dated, and notarized, and the record is devoid of any evidence that the parties did not intend them to be final representations of their intent.  As such, parol evidence would only be admissible if a party alleged that the contract was executed pursuant to fraud, accident, or mistake.  At no point in his briefing does Owens make any such allegation.  Therefore, any statements made contemporaneous to execution of either POA are inadmissible parol evidence.

that, in the event that an agent's power is revoked but he continues to act because he is unaware of the revocation, then "an affidavit executed by the agent . . . stating that he did not have . . . *actual knowledge* of the termination of the power by revocation" serves as "conclusive proof of the nonrevocation or nontermination of the power."[6] Id. (emphasis added).  Therefore, given the sole and repeated reference to "actual knowledge" throughout the statute, it appears that the legislature intended agents to have actual notice of the revocation of their authority under the power of attorney statute.

In Pennsylvania, "actual notice" is defined as: "notice . . . given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." Commonwealth of Pa. v. Crockford, 660 A.2d 1326, 1330 (Pa. Super. 1995) (internal citation omitted).  A determination of what constitutes actual notice is a fact specific inquiry to be conducted on a case-by-case basis.  See Sabbeth v. Tax Claim Bureau of Fulton Cnty., 714 A.2d 514, 517 (Pa. Commw. Ct. 1998) (citing City of McKeesport v. Delmar Leasing Corp., 656 A.2d 180 (Pa. Commw. Ct. 1995).  The central principle governing all such inquiries, however, is that the actual notice must be direct and personal, and "requires proof of facts and circumstances showing knowledge *actually received*." Crockford, 660 A.2d at 1330 (emphasis added).

The circumstances present in the instant case do not indicate that Lori had actual notice of the revocation of her power of attorney appointment.  The only section of the Barnett POA that even references revocation of an agent's powers is "Section 22: Third Party Reliance," which calls for

---

[6] Lori Barnett was deposed and signed an affidavit on February 9, 2012, which was submitted to the Court along with the Barnetts' Response.  Her affidavit, however, does not state—or even imply— that she did not have actual notice of the Owens POA or the revocation of her power of attorney status.  As such, § 5606 does not govern this dispute.

11

*written notice* of the agent's termination to third parties. (Compl., Ex. A.)  Owens concedes that Lori herself never received written notice of her alleged revocation, nor does he at any point in his briefing assert that he provided written notice of the alleged revocation to any third parties. (Owens's Resp. 17.)  In fact, numerous affidavits submitted by the Barnetts support the notion that even after execution of the Owens POA, several third parties—including banks, financial institutions, and retailers—continued to recognize Lori as Eisen's power of attorney in her conduction of his financial affairs.  (See e.g., Barnetts' Resp., Ex. C. (2/28/2011 bank statement indicating change of Eisen's mailing address to Lori's home in Kansas and 05/10/2011 bank statement sent to Eisen at Lori's Kansas address advising bank's closure of his account); Ex. F. (Lori's payment of Eisen's bills and expenses dated 02/10/2011, 02/23/2011, 03/01/11 and Lori's pre-arrangement and payment of Eisen's funeral expenses, dated 02/08/2011 and 02/10/2011); Ex. H (documents seeking legal guardianship of Eisen dated 04/27/2011)).  Moreover, Owens does not assert that either he or Eisen made any type of direct statement to Lori informing her of Eisen's alleged intent to revoke the Barnett POA.  As such, the record is devoid of any evidence that Lori "actually received" any "direct and personal knowledge" sufficient to place her on notice of the alleged revocation of her powers.

Despite this lack of direct and personal knowledge, Owens maintains that Lori was on notice[7] of the alleged revocation of her powers because "[t]he sequence of events makes it painstakingly

---

[7] Throughout his briefing filed with the Court, Owens never alleges that Lori had actual notice of the alleged revocation, but instead solely relies upon a theory of constructive notice. (Owens's Resp. 3, 17, 18, 19.)  Pennsylvania's power of attorney statute, however, never refers to "constructive notice."  Rather, as discussed in detail above, the statute's inferred legislative intent requires agents to receive actual notice of the revocation of their power of attorney authority.  In any event, the Court considers the merits of Owens's argument regardless of which title he assigns to his notice claims.

clear that [ ] Eisen's behavior indicated . . . that he no longer wanted [Barnett] to act as his agent." (Owens's Resp. 19.)  Owens bases this allegation on two specific events: (1) Eisen's termination of Lori's management of his bank account as his power of attorney; and (2) an alleged altercation in Eisen's hospice room in the days prior to his death.

In regards to the first allegation, Eisen filed a form with his bank on March 14, 2011, which indicated his desire to terminate Lori's authority to manage the funds in his account as his power of attorney.[8]  (See Barnetts' Resp., Ex. A.)  Owens claims that because Lori had previously been "making regular withdrawls from this account, she would have been on notice that Eisen had revoked her power of attorney at her first subsequent attempt to withdraw funds." (Owens's Resp. 18.)  Owens asserts that Lori must have at some point attempted to withdraw funds from the account and was denied access because she flew to Pennsylvania to visit Eisen shortly after the changes were made regarding management of the bank account.  (Id.)  These allegations, however, are nothing more than mere speculation and cannot serve as conclusive proof that Lori had notice of an alleged revocation of her power of attorney.  Owens has provided no concrete and verifiable evidence, or even made any plausible assertion in his sworn statement, that Lori actually tried to access the bank account but was denied access, let alone that her trip to Pennsylvania was solely in reaction to her "having been frozen out of [ ] Eisen's bank account[.]"  (Id.)  In contrast, the Barnetts have provided evidence to contradict Owens's unsupported assertions.  For example, they submitted a bank document which stated that all correspondence regarding Eisen's bank account (presumably including his monthly bank statements) would be sent to Lori's address in Kansas.  (Barnetts' Resp.,

---

[8] The Court notes that while Owens bases a significant part of his argument on the filing of this form revoking Barnett's power of attorney to manage Eisen's bank account, he did not submit it as an exhibit.  Rather, the Barnetts attached this bank form to their Response Motion.

Ex. C.)  The Barnetts also provided evidence that Lori continued to receive this correspondence from the bank until well after Eisen's death, and that no attempts were made to effectuate a change of address in the interim time period.  (Id.)

Moreover, even if Lori did at some point attempt to access Eisen's account and discovered that she could no longer do so, this action would not be enough to place her on actual notice of the revocation of her power as a whole, or, more relevant to the instant dispute, that she no longer had the authority to manage Eisen's life insurance policy.  As mentioned above, in Pennsylvania, a principal may appoint more than one agent to serve as his attorney-in-fact, and both are required to act jointly absent a contrary indication by the principal.  See 20 Pa. Cons. Stat. Ann. § 5602(b).  This structure allows for the agents to co-manage the principal's various affairs.  For example, one agent can manage the principal's financial affairs while another manages his healthcare.  Neither agent's appointment or power would revoke that of the other agent, and they would act jointly in their co-management of the principal's affairs.  As applied here, this means that even if Lori did at some point ascertain that she longer had authority to manage Eisen's *bank account*, this information is still insufficient to place her on notice of her authority to manage Eisen's *life insurance policy*.  As such, the Court finds that Owens has not successfully established that Lori had notice of the alleged revocation of her power of attorney under these circumstances, and there is no genuine issue of material fact regarding whether the bank management termination put her on notice of the revocation of her power of attorney as a whole.

Owens also asserts that Lori had notice of the revocation based on an alleged altercation between her and Eisen in the days preceding his death.  Specifically, Owens claims that hospital personnel witnessed Eisen "forcibly telling Lori Barnett to get out of his room during her late visit in April 2011."  (Owens Aff. ¶ 11.)  Once again, this assertion amounts to no more than mere

conjecture on Owens's part.  Owens has provided no evidence that would allow the Court to

conclude that this alleged altercation, if it did in fact occur, conclusively proves that Lori had notice

of the revocation of her power of attorney authority.  Even if the Court were to give merit to this

assertion, Owens does not claim that Eisen directly told Lori that he intended to revoke her power

of attorney at any point during this incident.  In fact, Owens does not even claim to have seen the

alleged altercation himself, but rather merely asserts that some unknown hospital personnel

"witnessed" the dispute.  It is well-established that when considering a motion for summary

judgment, a court may only consider evidence which would be admissible at trial.  Bouriez v.

Carnegie Mellon Univ., No. Civ.A.02-2104, 2005 WL 2106582, at *8 (W.D. Pa. Aug. 26, 2005)

(relying on Robinson v. Hartzell Propeller Inc., 326 F. Supp. 2d 631, 645 (E.D. Pa. 2004)) (further

citation omitted).  Moreover, Rule 56(c) of the Federal Rules of Civil Procedure requires that

affidavits submitted in support of a motion for summary judgment be based on "personal

knowledge."  Fed. R. Civ. P. 56(c)(4).  Owens's assertions in his Affidavit are not based upon his

personal knowledge, nor do they constitute admissible evidence as they are riddled with hearsay and

unsupported assumptions.  Owens does not identify or even suggest that he could, at some later

point, identify any of the hospital personnel that he claims witnessed the alleged dispute.  Whereas

"[h]earsay evidence produced in an affidavit . . . may be considered if the out-of-court declarant

could later present that evidence through direct testimony, . . . the mere possibility that [the] hearsay

statement will be presented in the form of admissible evidence at trial does not warrant consideration

of [it] at the summary judgment stage."  Bouriez, 2005 WL 2106582, at *8 (internal citations

omitted).  As such, Owens's mere conjecture and unsupported assertions that would be inadmissible

at trial are insufficient to survive a motion for summary judgment as he "must do more than simply

show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v.

15

Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Based on the above, Owens has not successfully established that an issue of material fact remains as to whether Lori had adequate notice of the alleged termination of her power of attorney. Given that Lori was not aware of the alleged revocation,[9] it follows that she was acting under the assumption that her power of attorney was still valid when she changed the beneficiaries of Eisen's life insurance policy back to the Barnetts. The Court therefore finds that the Barnetts are entitled to summary judgment as a matter of law on this point.

### B.    Lori's Fiduciary Duty as Eisen's Agent

Having determined that Lori acted pursuant to a valid power of attorney at the time that she changed the beneficiaries of the insurance policy, the Court next considers whether Lori properly executed her fiduciary duties as Eisen's agent in accordance with Pennsylvania's power of attorney statute. According to Lori, well-settled Pennsylvania caselaw establishes that, regardless of whether a principal previously designated a different beneficiary, any subsequent modifications by the agent

---

[9] Although neither party makes reference to this point, it is worth inquiring whether Lori had actual notice of the revocation of the Barnett POA when she discovered that Eisen had changed the beneficiary of the life insurance policy to Owens. If she did have actual notice of the revocation at this time, then it follows that her subsequent change of beneficiary designation would arguably be invalid as she would lack the authority to effectuate this action. As a general principle of law, when a principal imbues an agent with the power of attorney, he does not automatically relinquish all power to manage his own affairs. Rather, the principal-agent relationship under a power of attorney calls for both parties to exercise their authority concurrently and allows the principal to continue to take an active role in the management of his affairs.

In the instant case, Eisen, as the principal in the agency relationship, was legally able to change the beneficiary of his insurance policy to whomever he wished. His change of beneficiary to Owens, however, does not equate to a revocation of Lori's power of attorney. Rather, it is merely an action that the principal (Eisen) took on his own behalf that does not alter the power that he previously granted to his agent (Lori). Therefore, Eisen's act of changing the beneficiary of the policy was insufficient to place Lori on notice of the alleged revocation of her power of attorney to manage Eisen's financial and legal affairs as a whole.

to a beneficiary designation are permissible so long as the agent was acting pursuant to a valid power of attorney at the time.  Owens claims that this legal principle was altered in 2010 when the Pennsylvania General Assembly amended the power of attorney statute to require an inquiry into the principal's intent in such instances.  Lori counters that the 2010 amendment does not apply retroactively to her POA.  The Court first generally reviews the development of the law in this area, and then applies the governing law to the merits of the parties' arguments.

### 1.   The Scope of An Agent's Power of Attorney under Pennsylvania Law

In Pennsylvania, an agent acting under a general power of attorney has considerably broad authority.  See 20 Pa. Cons. Stat. Ann. §§ 5601 (providing that all powers of attorney shall include a statutory notice stating that an agent may exercise his "broad powers . . . without advance notice to [ ] or approval by" the principal) and  5603 (listing twenty-two actions that agents may take on behalf of principles under a power of attorney).  One of the actions that an agent may take under this broad grant of power is the authority to engage in insurance transactions on behalf of the principle. See id. § 5603(p).  This authorization includes "all powers with respect to insurance that the principal could [take] if present."  Id.  However, the agent cannot designate himself as a beneficiary of the principal's life insurance policy unless he is "the spouse, child, grandchild, parent, brother or sister of the principal."[10]  Id.  Moreover, the statute mandates that as a fiduciary of the principal, the agent must at all times "[e]xercise [his] powers for the benefit of the principal."  Id. § 5601(e)(1).

Over the years, the breadth of an agent's authority has proven to be an area of significant

---

[10] At first glance it may appear that this statutory limitation would apply to the present dispute and prevent Owens from collecting the insurance proceeds because he is not a member of Eisen's family.  A close analysis of the documents submitted in support of the parties' motions, however, reveals that *Eisen* actually signed and submitted the form that changed the beneficiary of the policy to Owens.  (Compl., Ex. D.)  Thus, the statutory limitation does not apply here because Owens did not actually designate himself as the beneficiary of the policy.

divergence in Pennsylvania law.  In recent years, the Supreme Court of Pennsylvania considered two notable cases that are analogous to the instant dispute.  In 2007, the Supreme Court addressed the breadth of an agent's power of attorney in life insurance policy transactions in In re Weidner, 938 A.2d 354 (Pa. 2007).  In Weidner, the decedent purchased a life insurance policy that named her second husband as the beneficiary.  Id. at 357.  The decedent's daughter, acting pursuant to her power of attorney, subsequently changed the beneficiaries of the policy to the decedent's children. Id.  Following the decedent's death, both the husband and children claimed the insurance proceeds. Id.  The issue before the Supreme Court was whether the daughter's validly-executed power of attorney—which explicitly stated that nothing was intended to limit her generally broad powers—was sufficient to authorize her change of the insurance policy designation.  Id. at 358. Citing the general and non-limiting language in the daughter's power of attorney document, the Supreme Court found that she had broad authority to do any of the actions delineated under Pennsylvania's power of attorney statute, including the right to engage in insurance transactions and change the beneficiary of the policy.  Id. at 360–61.

Two years later, the Supreme Court again addressed the breadth of an agent's authority under Pennsylvania's power of attorney statute in Estate of Slomski, 987 A.2d 141 (Pa. 2009), this time regarding the authority to change the beneficiaries of a retirement plan.  In Slomski, the decedent named his stepchildren as the beneficiaries of his retirement plan.  Id. at 142.  Three weeks prior to his death, the decedent's mother, acting pursuant to her power of attorney, changed the plan beneficiaries to the decedent's siblings.  Id.  The stepchildren sued, claiming that the mother's action effectuating the change was invalid.  Id.  The Supreme Court disagreed, finding that the mother's actions under her power of attorney were sufficient to authorize the change, regardless of whether the principal himself previously designated his stepchildren as the beneficiaries.  Id. at 653–54.

18

Thus, after Weidner and Slomski,  the governing legal principle appeared to be that agents acting pursuant to a valid power of attorney were permitted to exercise the broad powers granted to them by Pennsylvania's power of attorney statute, unless their specific power of attorney document limited this authority.

The troublesome import of Weidner and Slomski, however, was that an agent's actions pursuant to his power of attorney could at times contradict the known and probable intent of the principal.  In response to this incongruity, the Pennsylvania General Assembly amended the power of attorney statute in 2010 to permit an inquiry into the principal's intent in making beneficiary changes to life insurance policies and retirement plans.  20 Pa. Cons. Stat. Ann. § 5603(p) &(q) (as amended in 2010).  In regards to insurance policy transactions, the statute as amended now provides that: "An agent and a beneficiary of a life insurance policy shall be liable as equity and justice may require to the extent that, as determined by the court, a beneficiary designation made by the agent is inconsistent with the known or probable intent of the principal."  Id. § 5603(p)(3).  The amendment, made on October 27, 2010, provided that the new provision was to take effect within sixty days.

### 2.      Lori's Fiduciary Duty

Owens contends that the 2010 amendment to Pennsylvania's power of attorney statute applies to Lori's power of attorney.  Owens further asserts that Eisen's intent to designate Owens as the beneficiary of the life insurance policy was evidenced by filing the change of beneficiary form on April 14, 2011, and that Lori's subsequent change of beneficiary was therefore not in sync with Eisen's intent.  Lori avers that the 2010 amendment does not apply to her power of attorney because well-established Pennsylvania case law provides that, absent an indication by the legislature to the contrary, statutory amendments only apply prospectively, not retroactively.

In Pennsylvania, there is a long-settled presumption against the retroactive application of statutes affecting substantive rights.  See Brangs v. Brangs, 595 A.2d 115, 118 (Pa. Super. 1991).  The Pennsylvania General Assembly made this presumption mandatory in its enactment of 1 Pa. C.S.A. § 1926 (1991), which provides that: "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly."   Courts have interpreted this legislative mandate to mean that, unless the legislature has clearly expressed a contrary intent, an amendment can generally only apply prospectively.  See Brangs, 595 A.2d at 119; Cole v. Czegan, 772 A.2d 686, 690 (Pa. Super. 1998); Nicholson v. Combs, 703 A.2d 407, 411 (Pa. 1997); Home Health Care Mgmt. Inc. v. Wilson Sch. Dist.,45 Pa. D. & C. 4th 428, 434 (2000).  The Pennsylvania Supreme Court has also provided that:

> Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, *and the new provisions shall be construed as effective only from the date when the amendment became effective.*

Brangs, 595 A.2d at 118 n.5 (citing 1 Pa. Cons. Stat. Ann. § 1953) (further citation omitted) (emphasis in original).

In contrast to statutes affecting substantive rights, the presumption against retroactivity does not apply to statutes merely affecting procedural matters.  In distinguishing between the two, Pennsylvania courts have recognized that "[a] newly enacted law may be applied retroactively if it impairs no contract and disturbs no vested right, but only varies remedies, cures defects in proceedings otherwise fair, and does not vary existing obligations contrary to their situation when originally undertaken."  Schroeder v. Schrader, 682 A.2d 1305, 1308 (Pa. Super. 1996) (internal citations omitted).  Moreover, "[w]here the application of a statute would make a substantive change

in the rights and obligations of the parties, it is presumed that the legislature intended its provisions to have no application to contracts existing prior to the effective date of the law." See Brangs, 595 A.2d at 118 (internal citations and quotations omitted).

The Court must initially determine whether the 2010 amendment to Pennsylvania's power of attorney statute affects substantive or procedural rights.  Owens contends that the amendment is merely procedural, and thus applicable to the instant dispute, because it "merely clarif[ied] the Court's role in reviewing questionable beneficiary designations[.]" (Owens's Resp. 15.) Specifically, Owens asserts that the 2010 amendment was a mere clarification of an agent's already-existing duty to "act for the benefit of the principal" as required by § 5601 of the statute prior to the 2010 amendment.  The Barnetts disagree, claiming that the 2010 amendment imposes a new substantive duty on the agent to investigate the known and probable intent of the principal prior to taking actions on his behalf.  (Barnetts' Resp. 19.)

As detailed above, if the amendment "would interfere with existing contractual rights," the amendment would not apply retroactively to contracts that existed prior to the amendment's effective date.  Brangs, 595 A.2d at 118.  Here, the 2010 amendment to Pennsylvania's power of attorney statute imposes an additional obligation on agents to determine and act in accordance with the principal's known and probable intent. Despite Owens's arguments to the contrary, this additional obligation is not merely a clarification of the agent's pre-existing duty to act for the benefit of the principal.  First, an agent's duty to act for the principal's benefit is found in an entirely separate section of the statute—§ 5601.  The 2010 amendment was added to § 5603.  If the legislature intended to clarify or amend an agent's duty to act for the benefit of the principal, it would have done so in § 5601.  Second, there is a substantive difference between an agent's duty to act "for the benefit" of the principal and acting in accordance with the "known and probable intent" of the

principal.  The former allows the agent to exercise his discretion and act in a manner he deems to be within the principal's best interest, while the latter limits the agent's discretion and requires him to act in accordance with the principal's intent.  See Taylor v. Vernon, 652 A.2d 912, 916 (Pa. Super. 1995) (providing that when executing duties for the principal's benefit, the power of attorney "allows the attorney-in-fact to make conveyances *as she sees fit*") (emphasis in original).  Thus, the 2010 amendment providing for the agent's additional inquiry into the principal's known and probable intent makes a substantive change to Lori's rights and obligations under the Barnett POA.

Having determined that the 2010 amendment affects substantive rights, it is presumed that the statute would only apply prospectively, unless the General Assembly clearly and manifestly expressed its intention for the amendment to apply retroactively.  When it amended the statute, the General Assembly only provided that the amendment would be effective within sixty days.  In doing so, the legislature made no reference to "retroactive application," "application to previously-executed powers of attorney," or any other analogous terms.  Owens essentially contends that the General Assembly's sixty-day mandate is enough to warrant retroactive application here because if the legislature did not intend for the statute to apply retroactively, it would have specifically stated as much. This is not, however, how the presumption operates. Rather, proper application of the presumption leads to the opposite conclusion here:  the amendment cannot be applied retroactively because the General Assembly did not clearly and manifestly provide that the statute was intended to have retroactive effect. This interpretation is deeply rooted in prior Pennsylvania caselaw. See Brangs, 595 A.2d at 121 ("We reject appellant's suggestion that the retrospective intent of the legislature can be found in the fact that the amendment provided that it became effective immediately."); In re Estate of Cambest, 756 A.2d 45, 51 n.3 (Pa. Super. 2000) (finding the

22

presumption applicable and applying the statute as it read in 1992);  S.D. Richman Sons, Inc. v.

Com., Bd. of Fin. & Revenue, 416 A.2d 1161, 1163 (Pa. Commw. Ct. 1980) ("[T]he legislature

knows well how to provide that a statute should be applied retrospectively or prospectively[.]")

(footnote omitted); Commonwealth v. Repplier Coal Co., 35 A.2d 319, 324 (Pa. 1944) (stating that

the legislature's intent must be "so clear as to preclude all questions"); see also  Nicholson, 703 A.2d

at 411;  Cole , 772 A.2d at 690; Sorace v. Sorace, 655 A.2d 125, 130 (Pa. Super. 1995); but cf. Home

Health Care, 45 Pa. D. & C. at 453 (discussing a section of the act which unequivocally stated the

General Assembly's legislative intent); Humphreys v. DeRoss, 790 A.2d 281, 284 n.3 (Pa. 2002)

(citing a procedural amendment that merely expanded a statutory definition).  Therefore, it is clear

that the presumption applies to the instant dispute, and that the 2010 amendment requiring Lori to

determine and act in accordance with Eisen's known and probable intent does not govern here as the

Barnett POA was executed in 2004.

Rather, the Barnett POA is governed by the power of attorney statute as it read before the

amendment in 2010 and as interpreted by previous Pennsylvania case law.  Prior to the amendment,

Pennsylvania's power of attorney statute only required an agent to execute his duties "for the benefit

of the principal."  20 Pa. Cons. Stat. Ann. § 5601(e)(1).  Owens asserts that Lori violated this

statutory requirement because she engaged in "flagrant self-dealing in changing the beneficiaries [of

the life insurance policy] to herself and her family."[11]  (Owens's Resp. 15.)  The Court, however,

---

[11] Throughout his argument, Owens equates the § 5601 requirement to act for "the benefit of the principal" with the new § 5603 requirement to act consistent with the agent's "known or probable intent."  As discussed above, the two are substantively different legal concepts. Moreover, throughout his briefing Owens also repeatedly asserts that, as Eisen's fiduciary, Barnett was required to act in his "best interests" under the statute.  (See Owens's Resp. 3, 4, 5, 11,12, 15.)  However, Pennsylvania's power of attorney statute—both before and after the 2010 amendment—does not require the agent to act in the principal's "best interests."  As such, the

disagrees.  Specifically, Owens has not established that Lori's actions constituted "flagrant self-dealing."  Lori managed all of Eisen's financial and legal affairs for approximately seven years.  Aside from the incidents alleged by Owens in the months preceding Eisen's death, Owens has provided no evidence that Eisen ever expressed discontent with Barnett's management, intended to terminate her authority, or wanted to disinherit his family.  In fact, documents submitted by the Barnetts evince a contrary finding, indicating that Eisen intended for members of his family to take possession of his finances after his passing.  (See Barnetts' Resp., Ex. G (Morgan Keegan IRA Beneficiary Form designating Julie Eisen as 100% Sole Beneficiary, dated 04/30/06)).  Neither party disputes that in the months prior to Eisen's death, his health significantly declined due to terminal oral cancer.  It is in this delicate time frame that Eisen executed the second power of attorney appointing Owens—his "close friend"—as his attorney-in-fact.  Following the execution of this document, Eisen allegedly transferred management of his bank account to Owens, prepared a new will naming Owens as executor and sole residuary beneficiary of his estate, and designated Owens as the sole beneficiary of his $750,000 life insurance policy.  All these transactions occurred less than three months prior to Eisen's death, at a time when his health rapidly deteriorated from cancer that had metastasized to his brain.  The Pennsylvania courts have recognized that "[t]ransactions by which a decedent shortly before his death practically strips himself of all available property are naturally regarded with suspicion, and are to be scrutinized with a keen and somewhat incredulous eye."  Estate of Rutter, 2001 WL 1807746, at *7 (Pa. D. & C. 4th Dec. 19, 2001) (internal citations and quotations omitted).  Thus, it was logical for Lori, who had managed Eisen's financial affairs

---

Court will discuss Owens's allegations in accordance with the express statutory language of § 5601 requiring Barnett to act for Eisen's "benefit" as his agent.

since 2004, to regard the change of beneficiary designation to a familial outsider with suspicion, particularly given that she had no actual notice of the alleged revocation of her powers and that this change occurred at a time when Eisen's mental capacity was unknown.  Thus, it can be inferred from her actions that Lori was acting "for the benefit" of Eisen when she changed the beneficiary designation back to his family.  As such, Lori's actions were lawful under Pennsylvania's power of attorney statute as it was prior to the 2010 amendment.

Moreover, Barnett's actions are also in accordance with Pennsylvania case law prior to the 2010 amendment.[12]  The holdings of Weidner and Slomski provide that Barnett's change of beneficiary designation was valid so long as she acted pursuant to a validly-executed power of attorney that granted her the power to engage in insurance transactions on Eisen's behalf.  Neither party disputes that the Barnett POA was validly executed.  More importantly, the Barnett POA expressly granted Lori the authority to engage in "insurance" and "benefit plans" transactions, including the right "to change beneficiaries or ownership" of the policy on Eisen's behalf.  (Compl.,

---

[12] The Barnetts rely heavily on Taylor v. Vernon, 652 A.2d 912 (Pa. Super. 1995). Taylor, however, is a direct product of Estate of Reifsneider, 610 A.2d 958 (Pa. 1992), which the Pennsylvania General Assembly specifically overruled in its enactment of 20 Pa. C.S.A. § 5601.2.  See Metcalf v. Pesock, 885 A.2d 539, 541 (Pa. Super. 2005) ("It is the intent of subsections (a), (b) and (c) to overrule Reifsneider to the extent that it would permit an agent to make a gift under a power of attorney which does not specifically provide for that power. The purpose of these subsections is to provide that when the principal intends to authorize the agent to make a gift under the power of attorney, that authorization is specifically stated in the power of attorney.") (quoting 20 Pa. Cons. Stat. Ann. § 5601.2 Official Comment–1999) (internal punctuation omitted).  Moreover, Taylor addressed whether the power of attorney at issue empowered the agent to convey real property as a gift.  Taylor, 652 A.2d at 916.  This is not the issue in the instant case.  Rather, the issue here is whether the agent abused her fiduciary duty to act for the principal's benefit or exceeded the boundaries of her powers as delineated by her power of attorney document.  Thus, Taylor is not instructive here.

Ex. A ¶¶ 6, 7.)  Further, the opening paragraph of Barnett POA gave Lori the "full power of substitution . . . to transact all [Eisen's] business and to manage all [Eisen's] property and affairs as completely as [he] might do if personally present[.]"  (Id.)

Accordingly, based on the above, there is no question that Lori was authorized to change the beneficiaries of Eisen's insurance policy back to the Barnetts.  The law is clear that she was not required to conduct an inquiry into Eisen's "known and probable intent" prior to doing so, but rather merely had to act for Eisen's "benefit" and pursuant to the broad authority granted to her under the Barnett POA.  The facts of this case indicate that her actions were taken for Eisen's benefit.  As such, no genuine issue of material fact remains regarding Lori's fiduciary duties as Eisen's agent. Therefore, the Barnetts' are entitled to summary judgment as a matter of law on this point as well.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds insufficient evidence to find that Defendant Lori Barnett received adequate notice of the alleged revocation of her power of attorney authority or that she breached the fiduciary duty that she owed to Eisen as his agent.  Accordingly, summary judgment is granted in favor of the Barnetts.

An appropriate Order follows.